United States District Court
District of Maryland
101 West Lombard Street
Baltimore, MD 21201

FILED _____ ENTERED
LODGED _____ RECEIVED

FEB 2 8 2017

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX



TDC 17cr126

RE:    Violation Number: 6046638
       Hearing Date: 02/14/2017
       Case Number: 17-PO-1627TMD

Your Honor, I would like to appeal the Magistrate's ruling. I request that you end the prosecution and dismiss the charges against me. I request that you find me not guilty, remove all points against my license and waive all fines, penalties, costs and fees. I was told I needed a copy of the Hearing transcript to file this appeal, but after numerous attempts to get information and receive a copy of the transcript from the Clerk I still don't have a copy. I therefore, request an extension of the 14 day filing deadline. I have attached a page US District Court of Maryland traffic offense section that states I should have 30 days to appeal from the date of the Hearing. Due to the high risk of identity theft, I also request that my personal information, such as Social Security Number, address, etc., be redacted from all court documents pertaining to my case/violation number.

There is a presumption that I am innocent until proven guilty. The prosecution had the burden of proof, but failed to prove guilt beyond a reasonable doubt. Their evidence needed to establish a particular point to a moral certainty, and that it is beyond dispute that any reasonable alternative was possible. The prosecutions needed to prove that no reasonable doubt is possible from the evidence presented. It is a higher standard of proof.

I was denied my Constitutional right to due process because I was treated as if I was guilty and had to prove my innocence without the prosecution presenting evidence beyond a reasonable doubt. I was also pressured to lie and plead guilty, and my efforts to obtain procedural information and a copy of the transcript, which I was told that I needed to file an appeal, were obstructed.

1.  I was instructed to report at 9:00 AM. Not only was my case held last, but in the middle my case was put on hold due to the recording stopping and then because another defendant came hours late but was allowed to have his case heard before mine could resume. I had to request additional time off from my job protecting and advocating for US Veterans than I already had requested.

2.  At the Hearing there were three prosecutors sitting with the Officer. They were working together to gang up on me in an effort bully and intimidate me as I sought my guaranteed right to seek justice and to clear my name. I felt pressured to admit guilt to a crime that I did not commit and take a plea. I am a Federal employee in a public trust position. We cannot go around committing crimes. Admitting to a crime that I did not commit, not only would be a lie and would take my hard earned money, it could jeopardize my career position. I have attached a copy of the Notice to Appear that I received in the mail. It states in bold that by paying the ticket I would be admitting to a criminal offence and a conviction may appear in a public record with adverse consequences to me. It goes on to say that with payment the offence would be reported to the motor vehicle agency to have points applied to my record.

3. The Officer had two separate pieces of paper. One page had a copy of the front of the ticket, the other page showed what he said was a copy of the back of the ticket where he wrote details of what he alleges occurred from the point that he spotted me to the point where the traffic stop ended.

   a. The Officer didn't have his carbon copy of the actual ticket at the Hearing.
   b. There was no way to verify that the second piece of paper was what was really written on the back of my ticket.
   c. If the officer was going to write an account of the stop on the back of the ticket, my copy should have what he wrote and I should have been allowed to read it before being made to sign and receive a copy of the ticket. The Officer changed/manipulated the official record after the fact.

4. I presented evidence (Defendant's Exhibit 1 – 10) that the Officer confirmed and that was admitted into the record which I used to point out discrepancies and contradictions in the Officer's testimony that I was speeding at 31 mph. The transcript captures various times when I crossed examined the Officer and pointed out that things that he testified to were not feasible:

   a. Undisputed Facts:
      i. Ditto Avenue is a 2 lane road and that the Officer was driving his car north bound on Ditto Ave. approaching me as I was driving south bound on Ditto Ave.
      ii. The Officer agreed with me that cars passed each other on Ditto Avenue, and that he looked at me as the cars passed.
      iii. He agrees that the speed limit was only 20 mph at the block in front of the Child Development Center to just past that block at Stark St, at which it becomes 25 mph.
      iv. He agrees that he turned left on to a side street off of Ditto Ave., backed out onto Ditto and started driving the same direction on Ditto Ave that I was.
      v. He agrees that he then put on his lights and stopped me on Ditto Ave past the side street Sultan Drive just past the Fire station.
      vi. He agrees that were on Ditto Ave when he put on his lights and stopped me that the speed limit was 25 mph.
      vii. He did not dispute that I said it took him about 10 minutes to come to my car after pulling me over. It took him about 15 minutes to return after taking my license and registration.

   b. Disputed Data:
      i. I contend that I was never speeding. I came to a complete stop at Bullene Dr and Ditto Ave. I accelerated so that I was driving 20 mph by the time I passed the 20 mph sign and was in front of the Day Care Center. I accelerated to 25 mph after crossing Stark St and reaching the 25 mph sign. I continued at 25 mph as I headed down the Ditto Ave hill.

    ii.   The Officer disagreed with me on where our cars passed each other on Ditto Avenue.

        (1)  He testified that our cars crossed at Stark St. I contend that our cars passed after crossing Sultan St., which is approximately 1 block down from the hill from Stark St and 2 blocks down the hill from the Day Care Center.

    iii.  I disagree that the Officer tried to wave me down or made any contact with me before putting on his lights. He testified that he was waving me down to only give me a warning not a ticket.

    iv.  I contend that the Officer turned left on to the side street Sultan Drive then backed out on to Ditto Ave. The Officer initially testified that he flipped around, but after being questioned stated that he turned left on to Stark St., and then backed out on to Ditto Ave.

    v.   I contend that when we first viewed each other and where our cars passed on Ditto Ave. we were in the 25 mph zone and it was going down the Ditto Ave. hill.

    vi.  I contend that it was a rainy/drizzly overcast day. The Officer testified that it was sunny, not rainy.

5.  Appellant's Defense Presented During the Hearing – Some of the points presented as confirmed by the transcript:

    a.  I entered into evidence undisputed pictures showing the route that I took driving down Ditto Av e. the day of the traffic stop.

    b.  I had come to a complete stop at the stop sign at Bullene Drive which starts the block that the Day Care Center is on.

    c.  The 20 mph sign starts that limit once Bullene Dr. is crossed and continues past the Day Care Center to just past the end of the block at Stark St., where a sign starts the 25 mph speed limit.

    d.  The Day Care Center is on a short block at the top of the hill on Ditto Ave between Bullene Dr. and Stark St. You start down a hill at Stark St. There were no people outside the Day Care Center at that time.

    e.  When the Officer and I viewed each other's cars was just past Sultan St which is way down the hill. As the Exhibit pictures show, you can't see the Day Care Center at the top of the hill while driving up the hill. So the Officer could not have clocked me driving 31 mph in front of the Day Care Center as he testified.

    f.  Radars cannot go up a hill or around a corner. Even if it could go up the hill another car could have been driving past the Day Care Center and turned right on to Stark St. which would have taken him/her to a street where they could have gone to a different part of the base or existed the base. It could have clocked that car.

    g.  The Officer testified that is was a sunny day, but he put on the ticket that it was rainy. Windblown rain can reflect enough energy to give false signals.

    h.  The Officer testified that he was driving northbound toward me. Radar's accuracy is compromised in a moving vehicle due to false ground speed readings, adding in the speed of the Officer's vehicle.

i.  The Officer testified that he clocked me doing 31 mph directly in front of the Day Care Center while he was at the top of the hill at Ditto and Stark St. He testified that he was driving north bound toward me on Ditto Ave. He did not state that he stopped his vehicle as he approached and passed me, nor did I stop my vehicle.

    i.  It is just a few yards from Bullene to where he said he clocked me right in front of the Day Care Center and just a few more to Stark St. I would have been able to see the Officer's north bound car if I was going south bound at Bullene and Ditto. Why would I speed up to a 20 mph zone with a police car directly in front of me?

    ii.  He also testified that he tried to wave me down as we passed each other at Ditto and Stark St.

        (1)  How could he pass me at Ditto and Stark St at the same time clock me doing 31 in front of the Day Care Center as he arrived at Ditto and Stark St.?

    iii.  He testified that after passing and trying to wave me down that he flipped around to drive after me. During my cross examination I pointed out that the 2 lane road was too narrow to do a U turn. The Officer then agreed that he had turned left and backed out on to Ditto. Only he testified that the street that he turned left on to was Stark St.

        (1)  How could the Officer turn left on to Stark St and back out on to Ditto to follow me if he was, as he testified, passing and waving at me at Ditto and Stark St and also clocking me doing 31 mph while he was at Ditto and Stark St.?

j.  The block that the Day Care Center is short. The distance from where the 20 mph sign is and the point in front of where the Day Care Center is located is very short. There would not have been enough time to speed up to 20 mph in front of the Day Care Center even if I hadn't looked at the clock in my car then at the speedometer, especially considering I had just been at a complete stop at the stop sign.

k.  Why wouldn't the Officer have turned on his lights when, as he testified, he first clocked me doing 31 mph in front of the Day Care Center? He did admitted that he did not turn on his lights until he stopped me on Ditto Ave pass Sultan St, which is approximately 2 blocks away.

l.  If he tried to waive me down, as he testified, and I ignored him causing him to "flip"/make a U –turn wouldn't he have charged me with continuing to drive after being signaled to stop considering where he agreed that he actually stopped me down the hill almost 3 blocks away from the place he alleges he clocked me doing 31 mph?

m.  If he was only going to give me a warning why didn't he do that instead of giving me a ticket? If the warning was to slow down, I must have done that since he didn't charge me with continued speeding. He would have been successful in his goal to slow me down so there would not have been a need to follow me into a different speed zone, then turn on his lights and given me a ticket.

The prosecution did not present any actual documentation to show beyond a reasonable doubt that I was doing 31 mph in the 20 mph speed zone in front of the Day Care Center, because I wasn't. The prosecution was not able to explain the Officer's contradictions in his testimony and therefore, did not try. I presented testimony, evidence and a cross examination showcasing the discrepancies and contradictions in the

Officer's testimony. The prosecution did not meet its burden of proof, yet I was still found guilty in violation of my right to due process.

The Magistrate did not address my evidence or the Officer's discrepancies that I brought out in cross-examination. When finding me guilty, the Magistrate stated I had a chance to plead guilty, but didn't. He referenced a calibration certification from months before this incident. I objected due to the Hearsay Rule because the certifier wasn't present for me to question and because there was no evidence that the radar was calibrated the day in question, but I was overruled.  Therefore I request the District Judge vacate the Magistrate's guilty verdict, remove all points, fines and fees, find me not guilty and make me whole.

Respectfully submitted,

Lyniece Fuller
240-397-8893